# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff, | : | Case No. 1:17CR77 |
| v. | : | Judge Michael R. Barrett |
| **ROGER T. SKAGGS,** | : | |
| Defendant. | | |

## ORDER

This matter is before the Court on Defendant's: (1) Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") (Doc. 41); and (2) Motion to Compel Brady Material ("Motion to Compel") (Doc. 58). Both motions are fully briefed, with the Parties recently offering supplemental briefing on the Motion to Dismiss. The Motions are now ripe for disposition.

### I.   BACKGROUND

On June 21, 2017, Defendant Roger Skaggs was indicted on one count of sexual abuse of an incapacitated person. (Doc. 1). The events that are the subject of the indictment occurred on October 13, 2013 in Wiesbaden, Germany, where the alleged victim was serving as a military police soldier. Defendant had accompanied the alleged victim, the alleged victim's wife, and their family to Germany, residing with them as a "dependent" family member. After allegedly non-consensual sexual contact between Defendant and the alleged victim, a physical altercation ensued, and Defendant was treated for his injuries in a German hospital. Trial was scheduled to begin on June 18, 2018, but on June 13, 2018 the undersigned declared the Defendant incompetent to stand trial. The trial date will be reset

once the Defendant is restored to competency.

In the weeks leading up to the now vacated trial, the Parties finished briefing the Motion to Dismiss and Motion to Compel.

### A. Background Relating to the Motion to Dismiss

The government asserts that the Court has jurisdiction under the Military Extraterritorial Jurisdiction Act ("MEJA"), 18 U.S.C. §3261(a)(1). However, Defendant contends that the foregoing statute is unconstitutional on its face, and "as applied" to him. Regarding the latter challenge, Defendant argues that there are material fact witnesses (e.g., medical professionals who treated Defendant) beyond the subpoena power of the Court who reside in Germany, the unavailability of which compromises his Sixth Amendment right to present his defense. The Defendant has not fully disclosed *how* such witnesses are material to his defense, arguing that he is not required to reveal defense strategy in advance of trial. Over the objection of the government, Defendant asks that the Court entertain his arguments *ex parte*.

### B. Background Relating to the Motion to Compel

Defendant also contends that the government has withheld documents from him in violation of Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), or both. For example, Defendant asserts that he intends to rely on certain medical records during trial to identify and quantify the toxins in the alleged victim's system, which medical records allegedly bear on the alleged victim's reliability as a historian, and his biases and motives to lie about what he ingested on or around October 13, 2013. Defendant argues, however, that there are gaps in the records produced by the government, and seeks an order compelling:

1. Records pertaining to the alleged victim's psychiatric treatment in Germany prior to and at the time of the alleged offense, and his current medical/psychiatric care.
2. The alleged victim's Official Military Personnel File ("OMPF"), including his "NARSUM and the rebuttal submitted by [the alleged victim] related to his disability rating and separation from the military."
3. Exculpatory information provided to the government by potential witnesses.

Defendant attributes gaps in the records to the government's failure to produce certain documents in its possession or control, while the government contends that it has produced everything in its "possession." The government also argues that Defendant's Motion to Compel is untimely.

## II. ANALYSIS

### A. Motion to Dismiss

Pursuant to Fed. R. Crim. P. 12(b), "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending." Here, the Court is exercising jurisdiction over Defendant based on the MEJA, which states in relevant part:

> **a)** Whoever engages in conduct outside the United States that would constitute an offense punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States--
> **(1)** while employed by *or accompanying* the Armed Forces outside the United States; or
> **(2)** while a member of the Armed Forces subject to chapter 47 of title 10 [10 USCS §§ 801 et seq.] (the Uniform Code of Military Justice), shall be punished as provided for that offense.

18 U.S.C. § 3261 (emphasis added). Defendant argues, however, that: (1) Congress enacted the MEJA without authority; and (2) as applied to him, the MEJA violates his Sixth Amendment right to compulsory process under the United States Constitution. Defendant contends that, because the MEJA is unconstitutional, the Court lacks jurisdiction and must therefore dismiss this case.

3

1. Facial Challenge

"A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, [because] the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987). In an attempt to make such a showing, Defendant argues that Congress' enactment of the MEJA falls outside its powers enumerated in Article I, specifically Congress' power to: (1) regulate commerce with foreign nations; (2) define and punish piracies and felonies committed on the high seas, and offenses against the law of nations; or (3) make rules to regulate the land and naval forces – as accomplished through the Necessary and Proper Clause. According to Defendant, the MEJA is thus unconstitutional. The Court disagrees.

Other courts have rejected Defendant's argument, reasoning that an analysis of Congress' powers enumerated in Article I is misplaced in the context of the MEJA. *See, e.g.*, *United States v. Williams*, 722 F. Supp. 2d 1313, 1317 (M.D. Ga. 2010)(citing *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 315-16, 57 S. Ct. 216, 81 L. Ed. 255 (1936)). In *Curtiss-Wright*, the Supreme Court clarified that while Congress may only legislate pursuant to its powers enumerated in the Constitution, this "broad statement... is categorically true only in respect of our internal affairs." 299 U.S. at 315-16. Relying on *Curtiss-Wright*, the *Williams* court found that the MEJA was properly promulgated pursuant to Congress' "expansive extraterritorial" authority. *Williams*, 722 F. Supp. at 1318. Furthermore, even if this Court were required to perform an "enumerated powers analysis," at least one other court has found the MEJA properly promulgated under Article I's provision granting Congress express authority "to raise and support Armies." *See*, *e.g.*,

*United States v. Brehm*, 691 F.3d 547, 551 (4th Cir. 2012) (concluding that Congress' express authority under Article I to "raise and support Armies," and its general authorities to "make all Laws which shall be necessary and proper" to support the military overseas, are broad enough to reach even defense contractors who are foreign citizens when they assault members of the Armed Forces).[1]

Thus, in the absence of contrary authority, the Court is not persuaded that Congress exceeded its powers in enacting the MEJA.

### 2. "As Applied" Challenge

Defendant argues, in the alternative, that the MEJA is unconstitutional as applied to him. To support this argument, Defendant asserts that his prosecution under the MEJA has resulted in an inability to compel the attendance of material foreign witnesses to testify in his favor, in violation of the Sixth Amendment.

Pursuant to the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." U.S. CONST. amend. VI. A compulsory process clause violation requires a "contested act or omission . . . attributable to the sovereign," which "cause[s] the loss or erosion of material testimony . . . favorable to the accused." *United States v. Filippi,* 918 F.2d 244, 247 (1st Cir. 1990). However, "the Sixth Amendment can give the right to compulsory process only where it is within the power of the federal government to provide it." *United States v. Greco*, 298 F.2d 247, 251 (2d Cir. 1962). *Accord*: *United States v. Zabaneh*, 837 F.2d 1249, 1259-60

---

[1] The Court would note that the Sixth Circuit has already upheld the MEJA, albeit in the face of different constitutional arguments. *United States v. Green*, 654 F.3d 637, 653 (6th Cir. 2011) ("Green's constitutional claims fail because MEJA does not offend the separation-of-powers principle or the nondelegation doctrine, equal protection, or due process").

(5th Cir. 1988) (rejecting compulsory process challenge to extraterritorial criminal statute because "convictions are not unconstitutional under the Sixth Amendment even though the United States courts lack power to subpoena witnesses"). In other words, a "court's inability to subpoena a foreign witness does not implicate the compulsory process clause, *even if that witness could provide testimony that is material and favorable to the defendant.*" *United States v. Korogodsky*, 4 F. Supp. 2d 262, 268 (S.D.N.Y. 1998) (emphasis added).

To determine the constitutionality of Defendant's prosecution in light of his Sixth Amendment challenge, the government urges the Court to follow the Sixth Circuit's *Damra* test, requiring a defendant to show that: "(1) the government has exhibited bad faith; and (2) the testimony of the witnesses would be both material and favorable to the defense." (Doc. 46, PageID 275) (citing *United States v. Damra*, 621 F.3d 474, 489 (6th Cir. 2010)). The Court cannot help but note a slight disconnect in the government's logic. On the one hand, it suggests that Defendant has no Sixth Amendment right to testimony from German witnesses beyond this Court's subpoena power. (Doc. 46, PageID 274). On the other hand, it urges the Court to apply the *Damra* test to determine whether Defendant's Sixth Amendment right has been or will be violated absent the testimony of the German medical professionals. The government has missed a step, but for reasons stated below the logical leap results in a distinction without a difference.

Where a defendant's Sixth Amendment challenge is based on the unavailability of testimony from a foreign witness, the *Damra* test is not automatically triggered. This is because the Sixth Amendment is not implicated, unless a government act or omission affects a foreign witness' availability. *See*, *Filippi*, 918 F.2d at 247; *Greco*, 298 F.2d at 251. For example, in *Damra*, the government controlled the witness' availability via its deportation powers. 621 F.3d at 482. Thus, the Sixth Amendment was implicated. To test whether the

6

witness' unavailability at trial violated the Sixth Amendment, it was necessary first to determine whether the witness had been deported by the government in bad faith. *Id*. at 485. (characterizing "bad faith" as a "threshold" to the materiality/favorability inquiry; relying on *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)). Upon making the "threshold" bad faith showing, it became necessary for a defendant to show that the deported witness would have been material to the case and favorable to the defendant. *Id*. (relying on *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446 (1982)). Without bad faith, materiality/favorability were irrelevant. While the Sixth Circuit did not expressly characterize a government act or omission affecting witness availability as the trigger for the *Damra* analysis, the text of *Damra* supports this conclusion, because the Sixth Circuit qualified its two-part test by stating that it applies "in the context of deported witnesses." *Id*. at 489. While the Court is loath to confuse parties by characterizing a government "act or omission" as the "threshold to threshold" inquiry of whether the government has exhibited bad faith, a "government act or omission" is – logically – the unstated "threshold to the threshold" nonetheless. Stated more simply: there must be some government act or omission impacting witness availability – via deportation powers or otherwise – to even trigger the two-part *Damra* test.

By urging this Court to apply *Damra*, the government is technically allowing Defendant to skip the intermediate step of showing that the government holds some degree of power over the foreign witness' availability, thereby triggering the Sixth Amendment and the *Damra* test prematurely. Perhaps the government believes this approach is harmless to the United States' position, because it assumes that the first prong of *Damra* (i.e., governmental bad faith) can never be met where the government holds no power over the foreign witness' availability (*i.e.*, the above-mentioned "distinction without a difference"). Even so, it is

7

important for the courts to be precise with their analyses. Because Defendant has not shown that the foreign witness' availability has been impacted by a government act or omission, he is not entitled to a *Damra* analysis. For example, if Defendant were able to show that a foreign witness wished to testify voluntarily but has been prevented from entering the country, the Court would apply the *Damra* test. *See, e.g., Filippi*, 918 F.2d at 247 (observing that the witness "would have willingly appeared at trial" so "the onus on the United States was not to compel the attendance of [the witness], but merely to make it possible by requesting a Special Interest Parole from the INS"). Absent such circumstances, however, the Court is not convinced that *Damra* applies.[2]

Nor is the Court convinced that Defendant's proposed alternative test is appropriate. Defendant argues that the *Damra* test should be modified to drop the "bad faith" requirement. Without addressing *Youngblood* – which is the Supreme Court case from which the Sixth Circuit derives the "bad faith" prong of the two-part *Damra* test – Defendant essentially asks the Court to only assess whether the testimony of the foreign national residing beyond this Court's subpoena power would be material and favorable to the Defendant. Defendant relies on an unpublished Sixth Circuit opinion from 2001, which case has no bearing on the constitutional implications of a foreign witness' unavailability to testify at trial. (Doc. 48, PageID 287) (citing *Cunningham v. Stegall*, 13 F. App'x 286 (6th Cir. 2001)). Furthermore, adopting the Defendant's one-part standard would be to tacitly recognize a Sixth Amendment right to the testimony of foreign nationals beyond this Court's subpoena power, in contravention of leading authority. *See*, *Filippi*, 918 F.2d at 247; *Greco*, 298 F.2d at 251;

---

[2] Even if the Sixth Circuit disagrees, and directs the Court to apply *Damra*, Defendant's argument would still fail because the Defendant has not connected the availability of any witness, or lack thereof, to bad faith on the part of the government.

8

*Zabaneh*, 837 F.2d at 1259-60. The Court declines to do so, because: absent a government act or omission affecting the availability of a witness, a "court's inability to subpoena a foreign witness does not implicate the compulsory process clause, *even if that witness could provide testimony that is material and favorable to the defendant*." *Korogodsky*, 4 F. Supp. 2d at 268 (Scheindlin, J.) (emphasis added). *Accord*: *United States v. Epskamp*, No. 15-2028-cr, 2016 U.S. App. LEXIS 14472, at *5 (2d Cir. Aug. 5, 2016) (performing no materiality/favorability analysis, where the Sixth Amendment was not implicated because the government was powerless "to secure the testimony of an individual incarcerated in another country"); *U.S.A. v. Boyajian*, No. CR 09-933(A)-CAS, 2014 U.S. Dist. LEXIS 166806, at *45 (C.D. Cal. Nov. 26, 2014) (performing no materiality/favorability analysis, where the Sixth Amendment was not implicated because the government was powerless to compel the attendance of Cambodian clerks of court).[3]

In sum, due to the absence of circumstances indicating that a government act or omission has impacted a witness' availability, the Court finds the *Damra* test inapplicable. Thus, Defendant's request that the Court hear his materiality/favorability arguments *ex parte* is **DENIED AS MOOT**. As the medical personnel who treated Defendant in Germany are beyond the subpoena power of this Court, their absence at trial does not implicate the Sixth Amendment. *Korogodsky*, 4 F. Supp. 2d at 268. Because Defendant's "as applied" challenge is premised only on the Sixth Amendment, the challenge fails.

---

[3] The Court would note that it has encountered opinions from other courts performing materiality/favorability analyses, even where the defendant was unable to make a threshold showing that the government controlled in some manner the availability of the foreign witness. *See, e.g., United States v. Resurreccion*, 978 F.2d 759, 762 (1st Cir. 1992); *United States v. Beyle*, 782 F.3d 159, 170 (4th Cir. 2015). The Court does not read these cases as endorsing a materiality/favorability analysis in all cases, but instead reads these cases as performing the analysis to show that – even if the defendant could show bad faith – their constitutional arguments would still fail under any standard.

The Motion to Dismiss is **DENIED**.

### B. Motion to Compel

Defendant has moved to compel the production of three categories of documents under Rule 16 of the Federal Rules of Criminal Procedure or *Brady*.

At the outset, the Court will address the timing of Defendant's Motion to Compel. The government argues, persuasively, that Defendant delayed by filing his Motion to Compel only weeks before trial. Even on a hypothetical expedited briefing schedule, with a hypothetical instantaneous ruling, the Court is doubtful that the government could have complied with any order compelling the production of additional documents – the bulk of which presumably reside in Germany – in time for a trial that was scheduled to begin on June 18, 2018. Indeed, when the Court held its motions hearing on April 30, 2018, the Court was not advised by Defendant of any perceived defects in the government's pretrial disclosures. In arguing that the Motion to Compel is untimely, the government also hints at a waiver argument, by observing that Defendant forewent earlier opportunities to raise discovery issues with the Court and instead opted to raise them on the brink of trial. While the Court recognizes the government's concern, the current reality is that trial has been delayed while Defendant is restored to competency. Accordingly, the Court will set aside its concerns with the timing of Defendant's Motion to Compel and instead address whether the Defendant is entitled to the requested documents under Rule 16, *Brady*, or both— notwithstanding timeliness issues that might otherwise have caused this Court to exercise its discretion to deny relief.

In sum, the government argues that, notwithstanding the requirements of Rule 16 and *Brady*, it has produced everything in the prosecution's actual possession; Defendant argues

that the government "controls" additional, material documents that have been withheld, triggering the government's production obligations.

1. **Records pertaining to the alleged victim's psychiatric treatment in Germany prior to and at the time of the alleged offense, and his current medical/psychiatric care.**

Defendant moves to compel medical/psychiatric records under both Rule 16 and *Brady*. Rule 16 only applies to documents expressly "requested" by a Defendant, and the government contends that Defendant never "requested" the alleged victim's medical records. However, the Defendant requested the alleged victim's Official Military Personnel File ("OMPF"), and went on to state that he "believe[d]" the file would include medical records. (Doc. 58, PageID 494-95). While the Defendant would be well served to word requests for medical records more exactly in the future, and to expressly include alternative requests for medical records to the extent they are *not* included in the requested file, the Court believes that Defendant's imprecisely worded demand was still a document request for the alleged victim's medical records nonetheless. Thus, the Court will conduct a Rule 16 analysis.

"The Sixth Circuit has [held] that discovery afforded under Federal Rule of Criminal Procedure 16 is limited to the categories of evidence expressly referred to in the Rule." *United States v. Ledbetter*, No. 2:15-CR-080, 2015 U.S. Dist. LEXIS 139826, at *24 (S.D. Ohio Oct. 14, 2015) (citing *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988)). Under Rule 16(a)(1)(E), the government is required to permit inspection of items within its possession, custody, or control if (1) the item is material to preparing the defense; (2) the government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant. *United States v. Stamper*, No. 1:15cr109, 2018 U.S. Dist. LEXIS 38689, at *7 (S.D. Ohio Mar. 9, 2018). The only category implicated here is the first, *i.e.*, items that are material to preparing the defense. Thus, the next questions are whether the requested medical

11

records are material to preparing the defense and within the government's "possession, custody, or control."

   a. Materiality[4]

"It is a defendant's burden to make a *prima facie* showing of materiality in order to obtain disclosure of a document under Rule 16." *United States v. Dobbins,* 482 F. App'x. 35, 41 (6th Cir. 2012) (quoting *United States v. Phillip,* 948 F.2d 241, 250 (6th Cir. 1991)). In the context of Rule 16, the Sixth Circuit has made the following observation regarding what makes an item material to "preparing the defense":

> Materiality under Rule 16 has not been authoritatively defined in this Circuit. However, the Supreme Court has determined that "defense" within the meaning of Rule 16 means the "defendant's response to the Government's case in chief." *United States v. Armstrong,* 517 U.S. 456, 462, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Therefore, the rule applies only to 'shield' claims that 'refute the Government's arguments that the defendant committed the crime charged.' . . . It follows that information which does not counter the government's case or bolster a defense is not material "merely because the government may be able to use it to rebut a defense position." *United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir. 1993). Rather, there must be an indication that pre-trial disclosure would have enabled the defendant to "alter the quantum of proof in his favor," not merely that a defendant would have been dissuaded from proffering easily impeachable evidence. *Id.* In assessing materiality, we consider the *logical relationship* between the information withheld and the issues in the case, as well as *the importance of the information in light of the evidence as a whole*.

*United States v. Lykins,* 428 F. App'x. 621, 624 (6th Cir. 2011) (emphasis added). *Accord*: *United States v. McCaleb*, 302 F. App'x 410, 415 (6th Cir. 2008).

---

[4] The Court would note that, even though Defendant's Motion to Compel clearly seeks production under both Rule 16 and *Brady*, the government never refutes any of the materiality arguments advanced by Defendant.

When it comes to balancing the importance of the information withheld, against the evidence as a whole, the Court finds *United States v. Castillo* instructive— even though it used a *Brady* rather than Rule 16 framework to do the balancing. In *Castillo*, the defendant was accused of sexually assaulting the alleged victim in her sleep. No. 16-cr-20344, 2016 U.S. Dist. LEXIS 123792, at *1 (E.D. Mich. Sep. 13, 2016). Specifically, the government "allege[d] that Castillo sexually assaulted A.B. while she was under the influence of prescription sleep aid medication after A.B. had expressly denied him consent." *Id*. Castillo "acknowledge[d] that A.B. was on sleep medication, but argue[d] that A.B. had previously given him consent to engage in sexual acts with her while she was asleep." *Id*. at *1-2. In response to Castillo's request for A.B.'s psychiatric records, the government argued that the records were both privileged and "not sufficiently relevant." *Id*. at *5-7. The Court agreed with the government that "[t]he mere fact that a witness may suffer from a mental illness does not mean that the records of that illness [necessarily] go to [] credibility," but otherwise rejected the government's arguments and authorized a subpoena for the records. *Id*. at *8-9. In weighing the requested records against the evidence as whole, the Court observed that "the victim is the sole witness in this matter and thus her credibility may be determinative of innocence or guilt[.]" *Id*. at *8. However, due to the invocation of privilege, the Court first reviewed the records responsive to the subpoena *in camera* to determine the defendant's entitlement to the records under the confrontation clause. *Id*. at *9.

Here, Defendant asserts that, given the alleged victim's post-incident history of sleep hallucinations among other episodes, he has a good faith reason to believe there are records pre-dating the incident that implicate the alleged victim's credibility as a historian. Arguably, the potential importance of the records in this case exceeds the potential relevance in *Castillo*, where there was no evidence of sleep hallucinations. Furthermore, it is important to note that the

13

government offers no arguments refuting the materiality of the requested documents, or otherwise advocating restrictions on the Defendant's access to the requested materials—indeed, the government simply argues lack of "possession," and emphasizes that it has already given Defendant access to all medical/psychiatric records in its "possession." (Doc. 69, PageID 539) ("Specifically, the *entirety* of the [alleged] victim's medical and mental health records in the government's possession (Bates 000482-003620; over 3,100 pages) was produced to the defendant[.]") (emphasis added). Given the factual parallels to *Castillo*, and the absence of arguments contra materiality from the government, the Court finds the information withheld sufficiently important when weighed against the evidence as a whole to meet the materiality requirements of Rule 16. Indeed, in a case alleging sleep assault, the undersigned can think of few items of evidence more material to a defendant than evidence of an alleged victim's potential history of sleep hallucinations.

      b.  Possession, Custody, OR Control

Even though the prosecution may lack "actual" possession of certain medical/psychiatric records, the Court is persuaded that the remaining records may be sufficiently within the government's "control" to warrant disclosure. Neither the government nor the Defendant supply this Court with a test to determine the issue of Rule 16 government control. However, "[i]n order to trigger discovery under this provision, the papers, documents, or tangible objects must be in the actual custody or control of the federal government." 25-616 Moore's Federal Practice -- Criminal Procedure § 616.05 (2018). The prosecution is not required to conduct an interagency search for evidence. However, for Rule 16 purposes, material will be considered as being in the possession of the government only if it is in the actual possession of the prosecutor or if the prosecutor has knowledge of and access to the material while it is in the possession of another federal agency. *See, e.g., United States v. Happ*, No. CR2-06-129(8), 2008 U.S. Dist.

14

LEXIS 125801, at *10 (S.D. Ohio Nov. 25, 2008). The prosecution is deemed to have knowledge of and access to material that is in the possession of any federal agency that participated in the investigation that led to defendant's indictment, or that has otherwise cooperated with the prosecution. *Id*.; *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995) (rejecting district court's finding that the United States Attorney's Office lacked "possession and control" of files residing with the Bureau of Prisons; observing that "the Bureau of Prisons actually contributed to the investigation by locating most of the physical evidence during the initial search," which was sufficient to establish prosecutorial control for Rule 16 purposes).[5]

Here, it is the Court's understanding that the government has already accessed and disclosed portions of the alleged victim's medical/psychiatric records. It is also the Court's understanding that Defendant – although not subject to court-martial due to his civilian status – was at times in the custody or charge of military police soldiers while the alleged victim's accusations were being investigated. April 30, 2018 Tr. (Doc. 51), p. 90 ("And then he was in the hospital for 11 days. At the time, he was under -- I think it was Military Police were stationed outside of his room. Obviously, [the agent] and the other officers who were investigating both the incident with [the alleged victim] and the assault of Mr. Skaggs had the

---

[5] The concept of Rule 16 "possession, custody, or control," in the criminal context, does not appear to be well developed in the Sixth Circuit—hence the reason the Court turns to other authority on this point. However, to be clear, the Court rejects any contention by the government that – in the context of Rule 16(a)(1)(E) – "government possession, custody, or control" means only "actual possession" by the prosecution. Indeed, the text of Rule 16 itself shows that "government possession" is a more expansive concept than just possession by the prosecution, because (for example) Rule 16(a)(1)(F) is careful to use the term "attorney for the government" when it means trial counsel, and "the government" when it means something broader. To that end, the Court believes that the Ninth Circuit's interpretation reflects the distinction embodied in the Rule, while avoiding a sweeping definition of "the government" that would render the discovery obligations of United States prosecutors impossible.

ability to obtain those records at that time.").[6] Indeed, a lead agent investigating the alleged victim's accusation was with the "481st Military Police Detachment." (Doc. 38-1; PageID 198). While the Court does not wish to oversimplify the military's structure, by assuming that military participation in the investigation equals prosecutorial access to all military files, ordering the government to acquire the remainder of the alleged victim's medical/psychiatric records within the possession of military authorities is not tantamount to ordering a sweeping interagency search.[7]

---

[6] Although the quoted statement came from defense counsel, the Court would note that none of counsel's assertions were refuted by the government.

[7] Furthermore, if both the alleged victim and the Defendant had been active duty soldiers at the time of the alleged assault, making the Defendant subject to the jurisdiction of a military tribunal, there is ample authority supporting that the alleged victim's military physical/mental records would be sufficiently within the "control" of trial counsel to warrant disclosure under the Rule 701(a)(2)(B) of the Manual for Courts-Martial (subject to a Rule 513 analysis) —assuming that the Defendant could establish materiality. With respect to Rule 701, one military tribunal made the following observation:

> This rule makes one point crystal clear. When [records] are requested by the defense, such a request cannot be satisfied by making available for inspection only those reports *within the possession, custody, or control of trial counsel. See also United States v. Brooks*, *supra*. *Cf*. RCM 701(a)(1)(c) (in "possession" of trial counsel). Trial counsel must exercise due diligence in discovering such reports not only in his possession but also in the possession, control, or custody of other "military authorities" and make them available for inspection.

*United States v. Simmons*, 38 M.J. 376, 381 (C.A.A.F. 1993). The Court recognizes that Rule 513 of the Manual for Courts-Martial creates certain protections for mental health records where privilege is asserted, but such records residing with military authorities are deemed to be within the possession or control of trial counsel nonetheless.

Here, Defendant is not subject to the jurisdiction of a military tribunal because of his civilian status. However, military authorities participated in the investigation. In this Court's view, it makes little sense – in a case at least partially investigated by military authorities – to place a defendant in a worse position simply because DOJ Special Prosecutors bring the case to trial instead of a JAG.

Based on the information before the Court, the Court finds that the prosecution has Rule 16 control over the requested materials to the extent that they reside with military authorities – even though the material might technically reside within a different government office – because the military participated in the investigation of Defendant and has otherwise cooperated with his prosecution. For Rule 16 purposes, the Court is satisfied that the government has access to the requested medical records, which access the Defendant lacks. Indeed, Defendant has argued that he has no other means of obtaining the remainder of the records, a point which the government does not contest in its opposition brief.

Given the Court's findings on materiality and government control, the Motion to Compel is **GRANTED** in part, in that the government is **ORDERED** under Rule 16 to produce records pertaining to the alleged victim's psychiatric treatment in Germany prior to and at the time of the alleged offense, and his current medical/psychiatric care. This order only pertains to records residing with military authorities. Because the government represents that such records post-dating the incident were produced previously, and due to the absence of privilege arguments in the government's opposition brief, the Court assumes that any privilege has been waived. In any event, the Court is confident that the government will advise the Court forthwith if this assumption is incorrect, at which point the Court will conduct the appropriate waiver analysis, confrontation clause analysis, and analysis of whether an initial *in camera* review is warranted.

2. **The alleged victim's Official Military Personnel File ("OMPF")**

Defendant likewise moves to compel the alleged victim's OMPF under both Rule 16 and *Brady*. Defendant believes that the file is incomplete because it is missing the alleged victim's discharge certificates, among other items. The government contends that it provided the full OMPF "in its possession," and that if Defendant believed certain materials to have been withheld he may obtain them via a subpoena to the U.S. Army Resources Command.

a. Materiality

Defendant contends that the requested information is helpful to the defense because, based on the information contained in the medical records that post-date the incident in question, Defendant has a reasonable, good-faith belief that the withheld portions of the OMPF contain records documenting the alleged victim's prescription abuse, blackouts, hallucinations, criminal behavior, failure to successfully complete the Army Substance Abuse Program (ASAP), and disability evaluation. Again, the government offers no arguments contra materiality.[8] The Court is thus satisfied that the Defendant has sustained its materiality burden for Rule 16 purposes. *See, Castillo*, 2016 U.S. Dist. LEXIS 123792, at *8.

b. Control

The Court is likewise persuaded that the records are sufficiently within the government's "control" to warrant disclosure, to the extent they reside with military authorities. Thus, the Motion to Compel is **GRANTED** in part, in that the government is **ORDERED** under Rule 16 to produce the alleged victim's OMPF to the extent that it resides with military authorities. If not included in the OMPF, the government is further **ORDERED** to produce the alleged victim's NARSUM and the rebuttal submitted by the alleged victim related to his disability rating and separation from the military, to the extent they reside with military authorities.

3. **Exculpatory information provided to the government by potential witnesses.**

Last, Defendant moves for disclosure of (1) any inconsistent or false statement or information provided by the alleged victim about his drug use and prescription abuse history; (2) any and all arrests, charges, convictions, and underlying police reports that relate to the alleged

---

[8] Likewise, the government makes no arguments contra materiality with respect to Defendant's request for the NARSUM and the rebuttal submitted by the alleged victim related to his disability rating and separation from the military.

victim's prescription drug abuse, heroin/methamphetamine use, and alcohol abuse, as well as any police reports that relate to his character for truthfulness and his explosive behaviors; and (3) any exculpatory statements or exculpatory information provided by . . . the alleged victim's wife, or any other potential witness, related to the alleged victim's drug use and prescription use history and the alleged victim's behaviors on the day of the alleged offense.

Defendant does not expressly refer to any specific provision of Rule 16 establishing his entitlement to the foregoing records, so the Court construes this request as his *Brady* request. With respect to *Brady*, the "*Brady* rule is not a discovery device and . . . it confers no pretrial rights or remedies." *United States v. Mathis*, Case No. CR-1-97-15, 1997 U.S. Dist. LEXIS 24049, at *7 (S.D. Ohio June 2, 1997). *Accord*: *United States v. Hazelwood*, No. 1:10 CR 150, 2011 U.S. Dist. LEXIS 69110, at *64 (N.D. Ohio June 28, 2011) ("*Brady* offers defendants a post-trial remedy, not a pretrial one."). At this juncture, the Court must assume that the government has or will produce all *Brady* material within its possession – as that term has been interpreted in the context of *Brady* – but is otherwise powerless to "compel" production of the so-called *Brady* material.

### III. CONCLUSION

For the foregoing reasons, and consistent with the above:

(1) Defendant's Motion to Dismiss (Doc. 41) is **DENIED**; and

(2) Defendant's Motion to Compel (Doc. 58) is **GRANTED IN PART and DENIED IN PART**.

**IT IS SO ORDERED.**

                                                s/*Michael R. Barrett*
                                              Hon. Michael R. Barrett
                                              United States District Judge